IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


JOSEPH RASCON,

        Petitioner,

v.                                     CIV 01-845 JP/KBM

TIM LeMASTER,, Warden, and
PATRICIA A. MADRID, Attorney
General for the State of New Mexico,

        Respondents.


## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Joseph Rascon's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, *Doc. 1,* and Respondents' Answer, *Doc. 9.* Because he was convicted, sentenced and filed this petition after the effective date of Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its standards apply to this case. *E.g., Paxton v. Ward,* 199 F.3d 1197, 1204 (10th Cir. 1999). All of the issues can be resolved on the record, such that an evidentiary hearing is unnecessary. *E.g., Trice v. Ward,* 196 F.3d 1151, 1159 (10th Cir. 1999), *cert. denied,* 121 S.Ct. 93 (2000); Rule 8(a), *Rules Governing Habeas Corpus Under Section 2254.* Having considered the arguments, pleadings, and relevant law, I find the petition without merit and recommend that it be denied.

## I. Procedural Background

A jury convicted Rascon of numerous counts relating to sexual abuse of his girlfriend's eldest daughter, eight-year-old daughter Ashley. On June 24, 1998, the trial judge sentenced him

to consecutive sentences on each count for a total of 174 years imprisonment. Represented by counsel, Rascon pursued a direct appeal that raised a number of claims. Following assignment to the general calendar and full briefing, the New Mexico Court of Appeals affirmed the conviction. The New Mexico Supreme Court denied certiorari on April 6, 2000. *See Answer,* Exhs. A-I.

Proceeding *pro se,* Rascon commenced state habeas relief on October 18, 2000, with a pleading that raised numerous additional claims. The trial court denied relief and following a timely appeal, the New Mexico Supreme Court denied certiorari on May 15, 2001. *See id.,* Exhs. J-M.[1]

Petitioner then timely filed the instant petition on July 23, 2001. He raises only six claims, which I address in a slightly different order than he raised them. Rascon attached many exhibits to his federal petition[2] including: a transcript of his interview with the police; transcripts of portions

---

[1] The copies I have of Rascon's state habeas petition cut off some of his page numbers. Some of the page numbers that do show have the page number followed by an "A" or "B." I just counted each page sequentially, and that is the page cited in this recommendation.

[2] Because he did not separately number his exhibits, I designate them as follows:
Exh. 1 – copy of Defendant's 7/22/97 discovery demand
Exh. 2 – copy of 6/24/98 Judgment/Sentence
Exh. 3 – copy of Court of Appeals' 2/23/00 decision
Exh. 4 – copy of trial court's 2/19/01 decision with Petitioner's handwritten notes
Exh. 5 – copy of 5/15/01 denial of certiorari
Exh. 6 – copy of 10/18/00 state habeas petition, including request for counsel
Exh. 7 – extra copy of request for counsel included with state habeas petition
Exh. 8 – transcript of 5/22/97 grand jury proceedings with Petitioner's handwritten notes
Exh. 9 – transcript of Petitioner's 5/14/97 interview with police with his handwritten notes
Exh. 10 – transcript of trial testimony of Mary Ann Landry with Petitioner's handwritten notes
Exh. 11 – transcript of trial testimony of Cynthia Aragon with Petitioner's handwritten notes
Exh. 12 – transcript of trial testimony of Dr. Renee Ornelas with Petitioner's handwritten notes
Exh. 13 – copy of *United States v. Giles,* 967 F.2d 382 (10th Cir. 1992) with Petitioner's handwritten notes
Exh. 14 – copy of *Michigan v. Harvey,* 494 U.S. 344 (1990) with Petitioner's handwritten notes
Exh. 15 – copy of *State v. Reece,* 79 N.M 142 (1968) with Petitioner's handwritten notes

of testimony during grand jury proceedings and trial; and the video of Ashley's trial testimony.

## II. Factual Background

Petitioner began living with his girlfriend Darlene in 1995 and at that time she had four children. The three eldest (Ashley, Gabrielle, and Lawrence) had other biological fathers, and the baby (Renee) was Petitioner's.[3] The New Mexico Children, Youth and Families Division had contact with Darlene and her children from the time Ashley was born, investigating allegations of neglect and abuse. Darlene was described as "developmentally delayed and Ashley was described as having behavioral problems. Darlene's two other children had more severe problems: Gabrielle was described as "developmentally disabled and psychotic" and Lawrence was described as "very delayed in his speaking abilities." *Answer,* Exh. C at 3; *see also id.,* Exh. E at 2.

Social workers continued to have contact with the family after Rascon moved in. Following a suicide threat by Ashley in May 1997, she and her younger sister Gabrielle were placed in Charter Heights Hospital. A month later, during her first therapy session, Ashley accused Rascon of sexual abuse. *See id.,* Exh. C. at 3; *see also id.,* Exh. E at 2-3.

---

Exh. 16 – copy of *United States v. Kupau,* 781 F.2d 740 (9th Cir. 1986) with Petitioner's handwritten notes
Exh. 17 – copy of *United States v. Brown,* 832 F.2d 128 (9th Cir. 1987) with Petitioner's handwritten notes
Exh. 18 – copy of *States v. Moser,* 78 N.M. 212 (1967) with Petitioner's handwritten notes
Exh. 19 – copy of *Maldonado v. State,* 93 N.M. 670 (1979) with Petitioner's handwritten notes
Exh. 20(a) – copy of New Mexico Rule of Criminal Procedure 5-612 re: presence of defendant
Exh. 20(b) – transcript of 10/14/97 motion hearing (where Petitioner not present) with Petitioner's handwritten notes
Exh. 20(c) – typed excerpts from cases and federal rules re: presence of defendant along with Petitioner's argument
Exh. 21 – video testimony of victim 5/22/98 in envelopes between Petitioner and New Mexico Supreme Court Clerk (including unsigned receipt for exhibit).

[3] Darlene later had another daughter (Amanda) by Petitioner. *See Answer,* Exh. E. at 2.

An expert testified that one way abusers "groom" or "desensitize" children to sexual abuse is by exposing them to pornography. *Petition,* Exh. 12 at 134-35. Among other things, Ashley related to a detective that Rascon forced her to view pornography with him. *Petition,* Exh. 8 at 18. When the officers searched the Rascon residence, they found other items Ashley mentioned Petitioner used while abusing her, but they did not find any pornography. *Id.* at 17.

In her videotaped trial testimony Ashley said that before Rascon began abusing her, she had seen a pornographic video at the home of another child. She also mentioned that she learned certain words to describe parts of anatomy from the older children at Charter. She was uncomfortable using those words during her testimony. *Petition,* Exh. 21 (at 10:20-10:21; 11:12-11:14). These statements figure prominently in Petitioner's federal claims. Ashley also testified, however, that she learned about sexual acts ***both*** from the tape and from what she endured from Rascon. *See id.* Furthermore, she was quite detailed in her description of episodes of abuse by Rascon and unwavering in her contention that he, not former male partners of her mother, abused her. She testified that Rascon would abuse her when her mother was out of the house, for example, shopping. *See id.* (various parts throughout entire tape).

At trial the defense introduced its theories through cross-examination of the state's witnesses and in closing arguments. Among those theories was the contention that Ashley's prior exposure to sex acts came from viewing the pornographic tape, not from what she alleged Rascon had done. Thus, to the extent Rascon contends here that the jury was unaware of Ashley's prior exposure to pornography, he mischaracterizes the record. Another defense theory was that Gabrielle was the one who had been abused by her own father and that Ashley was protecting Gabrielle with her own allegations. *E.g., Answer,* Exh. E at 9.

# III.  Analysis

## A.  AEDPA Standards

This Court's review under AEDPA depends in part on how the state court treated the claim.  If a claim was not decided by the state court (and is not otherwise procedurally barred), the deferential AEDPA standards are inapplicable.  *See Battenfield v. Gibson,* 236 F.3d 1215, 1220 (10th Cir. 2001); *Aycox v. Lytle,* 196 F.3d 1174, 1177 (10th Cir. 1999).

If a state court decides a claim on the merits, its decision is entitled to deference and under AEDPA a federal court cannot grant a writ of habeas corpus unless:  (1) the state court decision is "contrary to, or involved an unreasonable application of . . . Supreme Court" precedent; or (2) is "an unreasonable determination of the facts in light of the evidence presented."  28 U.S.C. §§ 2254(d)(1)-(2); *see also Williams  v. Taylor,* 529 U.S. 362 (2000); *Van Woudenberg v. Gibson,* 211 F.3d 560, 566 & n. 4 (10th Cir. 2000), *cert. denied,* 121 S. Ct. 1117 (2001).

If the state court summarily denies the claim on the merits, the analysis under *Aycox* should control.  That is, where there is no reasoned application of the law to the facts, the federal habeas court must engage in an independent review of the record and pertinent federal law to ascertain whether the state's result contravenes the above AEDPA standards.  This independent review should be distinguished from a full de novo review of Petitioner's claims.  *See Aycox,* 196 F.3d at 1177-78.  Otherwise, under § 2254(e)(1) state court findings of fact are presumed correct in this proceeding unless Petitioner rebuts that presumption "by clear and convincing evidence."

## B.  Request For Counsel During Interview With Police

Petitioner's first claim is for violation of his Sixth Amendment right to counsel and his Fifth Amendment right against self-incrimination.  Rascon asserts that he requested counsel during

his interview with the police, the detective "wore him down" to secure his written waiver of counsel, and the indictment was based solely on what he told them during the interview. *Petition* at 19-22. He raised the claim in his state habeas proceedings, *Answer,* Exh. J at 3, but the trial judge did not mention the issue, *id.,* Exh. K.

Because the state had not formally accused him of a crime at the time he volunteered to meet with the police, no Sixth Amendment right to counsel attached. *E.g., Texas v. Cobb,* 532 U.S. 162, ___, 121 S. Ct. 1335, 1342-43 & n.2 (2001) (discussing differences between when *Miranda* rights attach versus when Sixth Amendment rights attach); *id.* at 1345 (dissent citing *Brewer v. Williams,* 430 U.S. 387, 401 (1977) for proposition that Sixth Amendment attaches when government formally accuses petitioner of a crime).

In a recent decision, the Supreme Court noted that the *Miranda* exclusionary rule prohibits the prosecution from using self-incriminating statements of defendant made during custodial interrogation. *Dickerson v. United States,* 530 U.S. 428, 441-443 (2000). Petitioner's own exhibits demonstrate that the Fifth Amendment is likewise not implicated for a number of separate reasons. First, the interview was not custodial. Rascon voluntarily went to speak with the detective, who permitted him to tape the interview. She reminded him that he was not under arrest and free to leave at any time, which he understood and he ultimately terminated the interview. *See Petition,* Exh. 9 at 3; *see also Answer,* Exh. E at 3. Second, Petitioner did not make any incriminating statements during the interview – he repeatedly and emphatically denied the charges.

Third, the indictment in fact was not based on what he discussed with the detective. The grand jury heard the detective discuss what she learned from the social worker who contacted the

police and heard a videotape of an interview made of Ashley while she was at Charter. The only reference the detective made to her interview with Petitioner was her response that Petitioner denied the allegations.

Fourth, there is no assertion or evidence that the _prosecution_ used Petitioner's "statements" from his interview during trial. The record only reflects that the state called the detective testify to the chronology of events during the investigation. On the other hand, the _defense_ introduced the fact that Rascon denied Ashley's allegations during the interview – it did so to impeach the detective, who had stated in her complaint that Rascon did not deny the allegations. *See Petition,* Exh. E at 5-6.

Furthermore, in context, Petitioner's invocation of his right to counsel was objectively equivocal. He continually interrupted the detective before questioning began, while she was trying to read him his *Miranda* rights, ascertain that he understood them, and determine whether he wanted to proceed. In these interruptions, Rascon stated that he and his wife wanted an attorney and were trying to find one but had been unsuccessful. What he characterizes as "wearing him down," I can only characterize as a patently painstaking effort by the detective to insure that Rascon understood his *Miranda* rights and did not want an attorney before questioning began. *See id.,* Exh. 9 at 3-8. After waiving his rights, Petitioner answered questions until he terminated the interview. As the Supreme Court stated in *Davis v. United States,* 512 U.S. 452 (1994), it is "entirely proper for [agents] to clarify whether petitioner in fact wanted a lawyer," *id.* at 462, and

> full comprehension of the rights to remain silent and request an attorney [is] sufficient to dispel whatever coercion is inherent in the interrogation process. . . . A suspect who knowingly and

> voluntarily waives his right to counsel after having that right
> explained to him has indicated his willingness to deal with the police
> unassisted.  Although *Edwards* [*v. Arizona*, 452 U.S. 973 (1981)]
> provides an additional protection -- if a suspect subsequently
> requests an attorney, questioning must cease -- it is one that must
> be affirmatively invoked by the suspect.

*id.* at 460-61 (internal quotations and citations omitted).  The transcript of Rascon's interview

with the detective conclusively establishes that Petitioner voluntarily waived his right to an

attorney.  For all the forgoing reasons, Claim One is without merit.

### C.  Speedy Trial

In Claim Two, Petitioner contends he was denied his constitutional right to a speedy trial

when he was arrested on May 15, 1997 but not tried until one year and eleven days later.  The

New Mexico Court of Appeals noted the issue was not preserved, but did not deny the claim on

procedural grounds.  It alternatively declined to address the issue on direct appeal, instead leaving

it for subsequent habeas proceedings.  *See Answer,* Exh. G at 3-4.  In postconviction proceedings

where the issue was raised, the trial court did not address it saying that the issue was decided on

direct appeal.  *See id.,* Exh. J at 11, Exh. K at 1.  Thus, there is no state decision of this claim on

the merits.  The Court of Appeals did make one factual finding, however, that "some of the delay

was clearly the result of Defendant's conduct."  *Id.,* Exh. G at 4.

"A Sixth Amendment speedy trial claim is assessed by balancing the length of the delay,

the reason for the delay, whether the defendant asserted his right to a speedy trial, and whether

the delay prejudiced the defendant."  *Castro v. Ward,* 138 F.3d 810, 819 (10th Cir.) (internal

quotations omitted), *cert. denied,* 525 U.S. 571 (1998); *see also Barker v. Wingo,* 407 U.S. 514,

530 (1972); *United States v. Dirden,* 38 F.3d 1131, 1137 (10th Cir. 1994).  The first factor –

length of delay – determines whether the Court looks at other factors. Only when the delay is presumptively prejudicial does the inquiry broaden to further inquiry. *See e.g., Doggett v. United States,* 505 U.S. 647, 652 (1992).

Under federal standards in the Tenth Circuit, there is no bright line rule when delay becomes presumptively prejudicial. In *Castro,* for example, the Court noted that "[d]epending on the nature of the charges, the lower courts have generally found postaccusation delay presumptively prejudicial at least as it approaches one year." 138 F.3d at 819 (citing *Doggett;* internal quotations omitted). *Castro* noted further that in the Tenth Circuit "delays of approximately five and one-half months, eight months, and thirty months" were found not presumptively prejudicial, yet a "fifteen month delay" was found presumptively prejudicial. *Id.* I find that a one-year and eleven day delay is not presumptively prejudicial, and thus this claim fails on that ground alone.

Alternatively, even if I apply the other *Barker* factors, Petitioner's claim still fails. Even though Petitioner asserted a right to a speedy trial within a couple of months after his arrest, *see Answer,* Exh. E at 12, he has not rebutted the state court finding that some of this delay is attributable to him[4] and sets forth no indication of how the delay prejudiced him in either his state

---

[4] Although I do not have the entire state record before me, what I do have shows:

05/15/97 – Petitioner arrested, *Answer,* Exh. E, at 10.
07/22/97 – defense requests speedy trial, *id.* at 12.
09/25/97 – defense files motion to compel the girls' medical records, *id.,* Exh. C at 4.
10/14/97 – hearing on the motion to compel, *Petition,* Exh. 20(b).
10/15/97 – defense requests continuance, needing more time to prepare for trial, *Answer,* Exh. E at 10 (earlier reference to 10/15/98 is an obvious typographical error).
02/12/98 – defense asks court to rule on the motion to compel, *id.,* Exh. C at 5.
after 2/12 – state asks for two continuances, one to attempt locate old records the defense requested, which were in archives, and the second for a

or federal habeas petitions.[5]

The *Barker* factors are not talismanic, and no single factor is "either a necessary or sufficient condition to the finding of a deprivation of the right of a speedy trial." *Barker,* 407 U.S. at 533. On balance, the few factors in Petitioner's favor do not warrant finding a speedy trial violation. Furthermore, because this Court is evaluating the speedy trial claim in the postconviction context, the utter lack of a claim or showing of prejudice alone could support this conclusion. *See Perez v. Sullivan,* 793 F.2d 249, 253-56 (10th Cir.), *cert. denied,* 479 U.S. 936

---

honeymoon, *see id.; id.,* Exh. E. at 12-13.
05/26/98  –  trial, *id.,* Exh. E at 10.
There is nothing in the record suggesting that the post-February continuances sought by the state were an intentional tactic to hamper the defense. To the contrary, an attempt to locate archived state documents that the defense requested is a valid reason justifying part of the delay. *See Barker,* 505 U.S. at 531 ("a valid reason, such as a missing witness, should serve to justify appropriate delay"). The prosecutor's honeymoon is a neutral reason at best and as such does not weigh heavily against the state. *See id.*

[5] Even if I consider all of the arguments he raised on direct appeal concerning prejudice, the claim is without merit. *See Answer,* Exh. E, at 13-14. The defense argued that Ashley could not be cross-examined effectively because she could not recall things and had to have her memory refreshed. The argument makes no sense logically. That Ashley could not remember things is itself impeaching. Furthermore, that the memory of a ***state's*** witness was allegedly impeded by the delay does not implicate the defense interests protected by the right to a speedy trial. *E.g., Barker,* 505 U.S. at 532; *Dirden,* 38 F.3d at 1138; *United States v. Tranakos,* 911 F.2d 1422, 1429 (10th Cir. 1990). The defense also argued that the delay in the trial allowed the state to introduce evidence that Ashley and her sister were observed by a foster parent "acting out" sexual play. That argument does not make sense, either. The evidence was that Gabrielle was the aggressor, lending support to the defense theory that Gabrielle was the victim and Ashley learned about sexual abuse from other than personal experience. The defense further argued that Petitioner spent time in solitary confinement contemplating the charges and possible sentence. This does not suffice to show prejudice. While Petitioner "undoubtedly experienced concern and anxiety over his impending trial, he has not alleged any special harm suffered which distinguishes his case from that of any other arrestee awaiting trial." *Dirden,* 38 F.3d at 1138. Placing Petitioner in solitary confinement helped him avoid "special harm" that sometimes befalls child molesters in prison, as evidenced by the beating he endured from other prisoners when placed in the general population following his conviction and shortly before sentencing.

(1986); *see also United States v. Young,* 166 F.3d 350 (10th Cir. 1998) (unpublished) (discussing *Perez* and holding:  "In sum, although the first three *Barker* factors weigh in Mrs. Young's favor, because she has not made a sufficient showing of prejudice, we conclude that the delay in sentencing did not deprive her of a speedy trial."), *cert. denied,* 526 U.S. 1165 (1999).

### D.  Presence At Motion Hearing

Petitioner argues in Claim Three that his due process rights were violated when he was not present for a hearing on the defense's motion to compel production of Ashley's and Gabrielle's Charter Heights Hospital medical records.  He asserts that the medical records were necessary to impeach Ashley by showing prior to her accusation, she omitted telling her therapist she had seen a pornographic video with a friend.

These medical records were subject to a confidentiality order.  At the hearing Petitioner's counsel waived his presence. To comply with the terms of the confidentiality order, the trial judge ordered in camera review of the documents before ruling on the motion.  *Petition,* Exh. 20(b) at 1.  After review, the judge did not require disclosure of the records.  *Answer,* Exh. F at 8.

Counsel raised the issue on direct appeal and, after reviewing the sealed records, the Court of Appeals found as a matter of fact that:

> there is nothing in them that, if disclosed to Defendant, would have
> created a 'reasonable probability' that the result of the trial would
> have been different.  Nothing in the medical records would have
> impeached any of the testimony at trial, nor would it have added
> further assistance to any defense theories asserted by Defendant.

*Answer,* Exh. G at 7.  It held as a matter of state law that because there was no prejudice to Petitioner, the trial judge did not abuse his discretion.  *Id.*  Petitioner also raised this issue in his state habeas petition.  *Id.,* Exh. J at 27.  The trial judge characterized the issue as ineffective

assistance of counsel and summarily denied it without analysis, saying Petitioner "did not show how this effected [sic] the trial." *Id.,* Exh. K at 1.

A defendant's presence in the courtroom is only constitutionally required at stages of "the criminal proceeding that [are] critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer,* 482 U.S. 730, 745 (1987). Due process does not require a defendant to be present "when [his] presence would be useless or the benefit but a shadow." *Snyder v. Massachusetts,* 291 U.S. 97, 105-106 (1934); *see also e.g., Hale v. Gibson,* 227 F.3d 1298, 1311-1312 (10th Cir. 2000), *cert. denied,* 121 S.Ct. 2608 (2001); *Tafoya v. Tansy,* 2001 WL 557971 (10th Cir. 2001) (unpublished). The Tenth Circuit does not define "meetings involving evidentiary matters" as "critical stages" where a defendant's presence is required. *Tafoya, supra.* The claim is without merit on that basis alone. Furthermore, in light of the Court of Appeals' unrebutted factual finding, there is no showing "how his presence [at the motion hearing] could have aided his defense or how his absence prejudiced him." *Tafoya, supra; see also Hale,* 227 F.3d at 1312. Accordingly, the state courts' decisions are not contrary to established federal law.

### E. Trial Judge's "Involvement" In Plea Negotiations

In Claim Five, Petitioner alleges the trial judge was involved in plea negotiations in violation of a number of constitutional rights, yet the only right implicated by this argument is due process. This claim was raised on direct review but the Court of Appeals declined to address it since it involved matters outside the record. *Answer,* Exh. G at 13. Petitioner raised the claim again on state habeas review. The trial judge did not address the issue indicating it was one "discussed in the appeal which affirmed the conviction." *Id.,* Exh. K at 1. Thus, there is no state

12

decision of this claim on the merits.

As Rascon related in an affidavit submitted on direct appeal and in his federal petition, the state offered a plea bargain with a sentence of eight to thirty-eight years, but would not continue to offer the plea if Ashley would be required to undergo a video deposition. Rascon evidently was unwilling to accept the offer unless he could plead no contest. He alleges he was taken to court, where the trial judge asked him if he understood the court's authority to impose sentence upon conviction and the huge number of years he potentially faced. The judge allegedly indicated that a no contest plea would be "unacceptable," but that if Petitioner pled guilty, he would not sentence Petitioner to more than thirty years. He then allegedly explained how "good time" could reduce time actually served on the sentence by almost half. *See Petition* at 35-26; *see also Answer,* Exh. E (attached affidavit).

Petitioner's precise complaint in this regard is not entirely clear. In his state habeas petition he argued that a "judge should not create incentives for guilty pleas by policy of different sentence." *Answer,* Exh. J at 17. To the extent Petitioner is challenging the fact that the trial judge did involve himself in plea negotiations, federal due process is not implicated. As the Tenth Circuit held in a similar case, federal and New Mexico statutory and rule prohibitions against judicial involvement in plea negotiations do not provide a basis for federal habeas relief, and a state plea will not be found involuntary absent a showing that the judge's participation amounted to coercion in violation of due process. *Miles v. Dorsey,* 61 F.3d 1459, 1466-67 & n.8 (10th Cir. 1995), *cert. denied,* 516 U.S. 1062 (1996). Here there was no coerced plea. I have found no authority for the proposition that a judge's mere involvement itself amounts to a violation of due process, nor would that conclusion be warranted under the rationale of *Miles.*

To the extent that Petitioner is asserting that his insistence on going to trial biased the judge against him, Petitioner's allegation is only found in his federal petition and consists of one phrase in a forty-eight page document – "my alledged (sic) bias charge against the court." *See Petition* at 38. Conclusory assertions are insufficient to support habeas relief. *E. g., Hatch v. Oklahoma,* 58 F. 3d 1447, 1469 (10th Cir. 1995) ("to warrant relief, or, as an initial matter, even an evidentiary hearing, a habeas corpus petitioner must allege sufficient facts to establish a constitutional claim" – internal quotations omitted), *cert. denied,* 517 U. S. 1235 (1996).

### F. Claim Four – Replaying Ashley's Video Testimony For Jurors During Deliberation

Instead of testifying live at trial, Ashley gave a video deposition shortly before it began and the video was admitted as an exhibit. *See Answer,* Exh. E at 7. On appeal, one of Petitioner's ineffective assistance of counsel arguments was that trial counsel "permitted" the video deposition "to be in the jury deliberation room." *Id.,* Exh. E at 25. For the purpose of addressing the numerous ineffectiveness claims, the Court of Appeals assumed counsel's conduct was deficient and addressed the prejudice prong. As for the videotape allegation, the record was not clear whether the jury had access to the testimony during deliberations. However, the court assumed the jury did have "access" and held it failed "to see how Defendant has shown prejudice." *Id.,* Exh. G at 12.

Petitioner raised the claim again in his state habeas petition with a different cast. There he cited four decisions.[6] Based on those decisions, and without elaboration, he asserted that the tape had been "replayed" for the jurors. Here, Rascon raises the same claim and supplies more factual

---

[6] *United States v. Brown,* 832 F.2d 128 (9th Cir. 1987); *United States v. Kupau,* 781 F.2d 740 (9th Cir.), *cert. denied,* 479 U.S. 823 (1986); *United States v. Vasquez,* 597 F.2d 192 (9th Cir. 1979); and *State v. Ross,* 85 N.M. 176, 510 P.2d 109 (Ct. App. 1973).

detail, which bears repeating verbatim in pertinent part and which I will assume is true for the purposes of analysis:

> Claim Four: Replaying the stepdaughters video testimony in the jurors delibration. Constitutional V Amendment Due Process. XIV Amendment Due Process, ***No cautionary instructions.***
> (1) Supporting Facts: I do not know the reason Jurors were allowed that trial testimony in the delibrations. ***I see it as a witness allowed in with the jurors.*** I remember that the T.V. stand was too wide for the courtroom entrance to the jury room. The Judges court clerk [Ms. J] took/pushed that T.V. recorder around to the jury-room by way of the Judges chamber door, which was wider. [Ms. J] opereated video.

*Petition* at 33 ("sics" omitted for ease of reading, emphasis added). On postconviction review, the trial judge did not mention this claim. Therefore, even though the Court of Appeals found that if the video was simply in the jury room Rascon suffered no "prejudice," there is no state decision on the claim that the tape was replayed for the jury.

The early New Mexico Court of Appeals decision in *Ross* that Petitioner relied on in the state habeas proceedings recognizes when an exhibit of a recorded conversation is replayed for the jury during its deliberations the evidence may receive undue emphasis to the potential prejudice of the defense. 85 N.M. at 178, 510 P.2d at 111. The Ninth Circuit decisions Petitioner relied on in his state habeas petition, as do other federal circuits, recognize the potential for prejudice and advise trial judges to use cautionary instructions. *E.g. United States v. Holton,* 116 F.3d 1536, 1541-42 (noting "survey of the practices of other circuits indicates that permissible procedures regarding transcripts vary widely" and the argument that "double exposure to transcripts of crucial evidence, i.e., during the trial and in the jury room, can be prejudicial to a defendant" – internal quotation and citation omitted), *cert. denied,* 522 U.S. 1067 (1998); *United*

*States v. Rodgers,* 109 F.3d 1138, 1143-45 (6th Cir. 1997) (two dangers in allowing jury to read

transcript of witness testimony include that jury may give the testimony undue emphasis or take it

out of context).

The New Mexico rules of criminal procedure adopted after the *Ross* decision appear to

take into account the problem of undue emphasis,[7] and New Mexico decisions after *Ross*

emphasize that the mere allegation of undue emphasis is no longer sufficient to find an abuse of

discretion.[8]  Indeed, Tenth Circuit decisions are in accord with this view,  *e.g., United States v.*

*Thomas,* 945 F.2d 328, 329 (10th Cir.) (and cases cited therein), *cert. denied,* 502 U.S. 951

---

[7]  For example, the rule on submission of exhibits to the jury provides that if the jury requests to "review ***any*** exhibit during its deliberations, the jury shall be furnished ***all*** exhibits received in evidence."  N.M. Rule 5-609 (C) (emphasis added); *see also State v. Fried,* 92 N.M. 202, 204, 585 P.2d 647, 649 (Ct. App.), *cert. denied,* 92 N.M. 260, 586 P.2d 1089 (1978).  The rule on when a jury requests for additional instructions "or to have any testimony read to them" provides that if a court in its discretion decides to accommodate the request, it can only do so with notice to and in the presence of the attorneys and defendants.  N.M. Rule 5-610(A); *see also Fried,* 92 N.M. at 204, 585 P.2d at 649.

[8]  The judges on the *Ross* panel were Chief Judge Wood, Judge Sutin and Judge Hernandez.  Two of them (Judges Wood and Sutin) were on the panel in *State v. Montoya,* 86 N.M. 316, 317, 523 P.2d 814, 815 (Ct. App. 1974).  In *Montoya* the defendant was tried for burglary and during deliberations the jury asked to whether an officer said defendant ran "from" or "through" a door.  The trial judge permitted the court reporter to read a portion of the officer's testimony.  Contrary to the *Ross* decision, the *Montoya* panel found no abuse of discretion. Instead, *Montoya* adopted the reasoning from a New Jersey decision that reasoned in part if jurors are considered intelligent enough to make decisions of guilt and innocence, then they must have enough sense to know the portions of testimony on which they disagree and need their memories refreshed.  *See Montoya,* 86 N.M. at 317, 523 P.2d at 815.
    In a later decision by the New Mexico Court of Appeals in *State v. Fried (see* footnote 7), a jury asked that the exhibit of a taped telephone conversation be replayed during deliberations. Over defendant's objection, the trial judge allowed the jury to hear only a portion of the tape.  On appeal, defendant argued that under *Ross* allowing the jury to hear a portion overemphasized that evidence.  Two of the judges on the *Fried* panel, Chief Judge Wood and Judge Hernandez, were judges on the *Ross* panel.  The *Fried* decision notes that in light of the new criminal rules and *Montoya,* the *Ross* "overemphasis" argument  regarding rehearing evidence is no longer persuasive.  92 N.M. at 204, 585 P.2d at 649.

(1991), and the Sixth Circuit decision in *Rodgers* notes that there is no problem of undue emphasis when jurors are given the entire testimony of the witness they want to rehear, 109 F.3d at 1143.

Operating under the state criminal rules, New Mexico decisions appear to focus on the distinction between exhibits (which the jurors can have upon request and review outside of a defendant's presence) and rehearing witness testimony (which if granted is to done in the presence of counsel and the defendant).[9] The *Fried* decision in footnotes 7 and 8, for example, held it was not error for a judge to allow jurors to replay the tape of a conversation between defendant and an undercover agent during deliberations. It held that "[w]e see no conceptualistic distinction between review an exhibit that it typed or written, and an exhibit that is recorded. [Rule 5-609(c)] permits a jury to review any exhibits during its deliberations; the rule does not exclude recorded exhibits." 92 N.M. at 204, 585 P.2d at 649.

None of the above state or federal decisions are constitutionally-based. Under New Mexico law, as well as in the federal system, it is the trial judge's discretion whether to allow the jurors to rehear trial testimony. Thus, even if it were state error to allow the jurors to replay the tape and even if the trial judge did not give a cautionary instruction to the jurors, the inquiry for federal habeas purposes is whether that rendered the trial so fundamentally unfair as to amount to a denial of due process. *E.g., Smith v. Gibson,* 197 F.3d 454, 460 (10th Cir. 1999) (failure of state

---

[9] *See State v. Vialpando,* 93 N.M. 289, 299-300, 599 P.2d 1086, 1096-97 (Ct. App. 1979) (videotape deposition received as evidence at trial and sent to jury room and jurors asked to see transcript, which judge denied; as transcript was not in evidence and jurors apparently did not ask to have portions of video "read" to them, held judge did not abuse discretion), cert. denied, 93 N.M. 172, 598 P.2d 215 (1979); *State v. Riordan,* 86 N.M. 92, 93, 519 P.2d 1029, 1030 (Ct. App. 1974) (defendant and attorney need not be present when jurors view exhibits).

to *sua sponte* give cautionary instruction analyzed as due process issue), *cert. denied,* 531 U.S. 839 (2000); *Duvall v. Reynolds,* 139 F. 3d 768, 787 (10th Cir.), *cert. denied,* 525 U. S. 933 (1998) (error of state law not cognizable in federal habeas unless rendered trial fundamentally unfair). "'A trial is fundamentally unfair . . . if it is shocking to the universal sense of justice.'" *United States v. Tome,* 3 F. 3d 342, 353 (10th Cir. 1993) (quoting *United States v. Russell,* 411 U. S. 423, 432 (1973)), *rev'd in part on other grounds,* 513 U. S. 150 (1995).

I find that even if the jurors reviewed Ashley's video deposition, it did not render Petitioner's trial fundamentally unfair. The key evidence and determination for the jury was whether they believed Ashley to be credible. Reviewing her testimony during deliberations therefore did not unduly emphasized only a portion of the evidence over other contradictory evidence. Rascon challenged her credibility in part based on her testimony of admitted exposure to pornographic materials outside her home. Thus, replaying the tape also could have equally enured to the benefit of the defense as the prosecution. As such, I find this claim without merit.

### G. Ineffective Assistance of Counsel

The two-prong test announced in *Strickland v. Washington,* 466 U.S. 668 (1984) governs ineffective assistance of counsel claims. *E.g., Mayes v. Gibson,* 210 F.3d 1284, 1288 (10th Cir.), *cert. denied,* 121 S.Ct. 586 (2000). Rascon must first show that counsel's representation was "objectively unreasonable." *Clayton v. Gibson,* 199 F.3d 1162, 1177 (10th Cir. 1999), *cert. denied,* 121 S. Ct. 100 (2000). In doing so, he must overcome the "strong presumption" that counsel's conduct falls within the "wide range" of conduct that is considered to be trial strategy and is deemed "reasonable professional assistance." To be constitutionally ineffective, counsel's conduct "must have been completely unreasonable, not merely wrong." *Moore v. Gibson,* 195

F.3d 1152, 1178 (10th Cir. 1999), *cert. denied,* 120 S. Ct. 2206 (2000); *see also Hawkins v. Hannigan,* 185 F.3d 1146, 1152 (10th Cir. 1999).

Petitioner must also establish "prejudice" – absent counsel's errors, there is a "reasonable probability" that the outcome of the trial would have been different. *Moore,* 195 F.3d at 1178. "Reasonable probability" means that confidence in the outcome is undermined. *Foster v. Ward,* 182 F.3d 1177, 1185 (10th Cir. 1999), *cert. denied,* 529 U.S. 1027 (2000). An ineffective assistance of counsel claim fails if either of the *Strickland* prongs are not met. It is entirely appropriate for a habeas court to analyze the prejudice prong first and exclusively, if that is the easier course. *E.g., Scoggin v. Kaiser,* 186 F.3d 1203, 1207 (10th Cir.), *cert. denied,* 528 U.S. 953 (1999); *Cooks v. Ward,* 165 F.3d 1283, 1292-93 (10th Cir. 1998), *cert. denied,* 528 U.S. 834 (1999).

It does not appear that all of Rascon's ineffectiveness claims were presented in his state habeas petition. For comity reasons, ordinarily federal habeas claims must be exhausted before a federal court will hear them. When faced with a mixed petition of exhausted and unexhausted claims, the federal habeas court can require exhaustion or can reach the merits to deny unexhausted claims. *E.g., Brown v. Shanks,* 185 F. 3d 1122, 1123 (10th Cir. 1999). The arguments underlying most of his several alleged instances of ineffectiveness are related to issues already found without merit above. Therefore these claims fail to show establish either prong.[10]

---

[10] Petitioner claims his trial attorney was ineffective for: (1) not securing the medical records (which the judge disallowed following in camera review); (2) not securing his appearance at the motion hearing; (3) asking for a continuance despite invocation of speedy trial, (4) not challenging the trial judge's intervention in plea negotiations; (5) refusing to secure Petitioner's affidavit of what he alleged the trial judge said during plea negotiations, apparently with the docketing statement, although his other attorney on appeal did so with the brief in chief; and (6) alleged discovery violations by the prosecution regarding not receiving material to demonstration

In his final arguments, Rascon contends that trial counsel was ineffective in failing to impeach Ashley in two ways. Petitioner first faults counsel for not putting Darlene on the stand to establish his "alibi" that Ashley went with Darlene to the store. Counsel's trial strategy in not pursuing this line of inquiry is evident. Darlene gave investigators contradictory information about whether she was aware Rascon was abusing Ashley. Also, given Darlene's developmental problems, it may have been impossible to predict how she would testify. *See Petition,* Exh. 8 at 19-20. Furthermore, if Darlene denied Rascon had abused Ashley, she could have been cross-examined on the times she took the children and sought shelter from Rascon. *See Petition,* Exh. 10 at 19.

Plaintiff also asserts that counsel failed to introduce evidence that Ashley and Gabrielle told a social worker that Rascon hit Gabrielle on a day when he had actually been in jail on other charges. Again counsel's strategy is evident. Attempting to impeach Ashley with evidence that he was in jail would have alerted the jury to his prior incident with the law, or, given Petitioner's reference to enhancement as a "habitual" offender, possibly opened the door to his entire past criminal history. *See Answer,* Exh. E (attachment); *Petition* at 36. Thus, counsel's conduct was not unreasonable. I also find that failure to introduce this evidence does not undermine confidence in the jury's verdict and therefore, Petitioner also fails to establish prejudice.

Wherefore,

**IT IS HEREBY RECOMMENDED THAT** the petition be denied and this action dismissed with prejudice.

----

that Ashley saw the pornographic video. Petitioner claims his appellate attorney was ineffective for not raising these issues on appeal. *See Petition* at 40-48

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the ten day period  if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**


_____
UNITED STATES MAGISTRATE JUDGE